## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ALTON SCOTT,
12716 Johnson Road
Manor, TX 78653

JOHN MALONE, and
17 Linda Road
Wilmington, MA 01887

CLIFFORD TODD HANKS,
435 Hopewell Road
Downingtown, PA 19335

on behalf of the Sodexo 401(k) Employees'
Retirement Savings Plan and Trust, and on
behalf of a class of all other persons similarly
situated,

          Plaintiffs,

v.

SODEXO, INC.,
915 Meeting Street, 15th Floor
Suite 15205
North Bethesda, MD 20852
County of Residence: Montgomery County

THE PLAN ADMINISTRATIVE
COMMITTEE OF THE SODEXO 401(K)
EMPLOYEES' RETIREMENT SAVINGS
PLAN AND TRUST, and
915 Meeting Street, 15th Floor
Suite 15205
North Bethesda, MD 20852
County of Residence: Montgomery County

JANE and JOHN DOES 1–25,

          Defendants.

Civil Action No. 1:26-CV-2508

**CLASS ACTION COMPLAINT**

## I.    INTRODUCTION

1.    Plaintiffs Alton Scott, John Malone and Clifford Todd Hanks ("Plaintiffs"), on behalf of the Sodexo 401(k) Employees' Retirement Savings Plan and Trust (the "Plan"), and on behalf of a class of similarly situated participants in the Plan, bring this action for breach of fiduciary duty and prohibited transactions under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), against Sodexo, Inc. ("the Company" or "Sodexo"), The Plan Administrative Committee of the Sodexo 401(k) Employees' Retirement Savings Plan and Trust (the "Committee"), and Jane and John Does 1–25, the individual members of the Committee during the proposed class period ("Defendants").

2.    The Plan is a defined contribution plan for Sodexo employees to save for their retirements. Most fees assessed to participants in a defined contribution plan are attributable to two general categories of services: plan administration (including recordkeeping), and investment management. Fiduciaries of defined contribution plans must engage in a rigorous process to control these costs to ensure that participants pay no more than a reasonable level of fees. This is particularly true for large plans, like the Plan, which have the bargaining power to obtain the highest level of service at the best price. Fiduciaries must also avoid self-dealing.

3.    Throughout the Class Period (defined below), Defendants allowed the Plan's recordkeeper, Voya Financial, Inc., to receive excessive compensation through: (1) direct, "hard dollar," fees the Plan paid to Voya; (2) indirect, "soft dollar," fees paid

by non-Voya managed mutual funds; and (3) float interest, freedom to market rollover-materials to Plan participants, and other forms of indirect compensation.

4.      Defendants' fiduciary obligations under ERISA require that they ensure, at all times, that Plan assets are never used for the benefit of the employer, and that they scrupulously avoid any transaction in which Plan assets would be transferred to, used by, or inure to the benefit of, a party in interest, such as the Company and Voya, in connection with the Plan. Defendants' fiduciary obligations under ERISA also require that they ensure, at all times, that the fees paid by the Plan are not more than reasonable.

5.      Defendants' obligations under ERISA also require them to avoid prohibited transactions under ERISA § 406, 29 U.S.C. § 1106.

6.      Plaintiffs bring this action by and through their undersigned attorneys based upon their personal knowledge and information obtained through counsel's investigation. Plaintiffs anticipate that discovery will uncover further substantial support for the allegations in this Complaint.

## II.    NATURE OF THE ACTION

7.      Under ERISA, the obligations that retirement plan fiduciaries owe to the plan's participants and beneficiaries are "the highest known to the law." *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 770 (4th Cir. 2019).

8.      Plan fiduciaries owe duties to the plan and plan participants and are required to: perform with undivided loyalty; act prudently; and defray reasonable plan expenses. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

3

9. Defendants, who during the Class Period are or were fiduciaries of the Plan, have violated their fiduciary duties owed to the Plan and its participants, including Plaintiffs.

10. Defendants, during the Class Period, were responsible for selecting, monitoring, and removing the Plan's recordkeeper, and approving or contracting for Plan administrative services. Instead of acting for the exclusive benefit of the Plan and its participants and beneficiaries when performing these duties, Defendants forced the Plan to allow Voya to receive excessive compensation for the services it provided, and approved Plan payments to the Company that were impermissible under ERISA.

11. This class action is brought on behalf of participants in the Plan who participated at any point since June 23, 2020 (the "Class Period").

## III. JURISDICTION AND VENUE

12. **Subject Matter Jurisdiction.** This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

13. **Personal Jurisdiction.** This court has personal jurisdiction over each of the Defendants because they reside and/or transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and the Plan is and was administered in this District and the breaches of ERISA took place herein. This Court

also has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Maryland.

14.    **Venue.** Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is and was administered in North Bethesda, Maryland, which is within this District, the breaches of ERISA took place in this District, and a defendant, including the Company and the Committee, reside or may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because a defendant resides and/or does business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## IV.    PARTIES

15.    Plaintiff Alton Scott is a resident of Manor, Texas. He was an active participant in the Plan during the entire Class Period until he rolled out of the Plan in 2026. He is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).

16.    Scott, like substantially all Plan participants and beneficiaries, was not provided any information regarding the substance of Defendants' deliberations, if any, concerning the Plan's menu of investment options or selection of service providers during the Class Period.

17.    Plaintiff John Malone is a resident of Wilmington, Massachusetts. He was an active participant in the Plan during the entire Class Period until he rolled

out of the Plan in 2026. He is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).

18. Malone, like substantially all Plan participants and beneficiaries, was not provided any information regarding the substance of Defendants' deliberations, if any, concerning the Plan's menu of investment options or selection of service providers during the Class Period.

19. Plaintiff Clifford Todd Hanks is a resident of Downingtown, Pennsylvania. He was an active participant in the Plan during the entire Class Period and remains an active Plan participant. He is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).

20. Hanks, like substantially all Plan participants and beneficiaries, was not provided any information regarding the substance of Defendants' deliberations, if any, concerning the Plan's menu of investment options or selection of service providers during the Class Period.

21. Plaintiffs lacked knowledge of Voya's compensation from the Plan or from profits on the assets invested in the Plan, the existence or extent of any administrative payments to Voya and the Company, and the recipients of and services provided for the Plan Administration, and the reasonable rates for large defined contribution plan recordkeeping services. Plaintiffs otherwise had no knowledge of the substance of the deliberations, or of the nature of the investments offered in the Plan beyond what was provided to them by the Plan. Plaintiffs discovered their claims shortly before commencing this action.

6

22.    Defendant, the Company, is the Plan's Sponsor. It is a large multinational corporation that provides outsourced food services and facilities management across 45 countries, with its principal place of business in North Bethesda, Maryland.

23.    Defendant, the Committee, is comprised of employees and partners of the Company. The Committee has the authority to select and retain the Plan's recordkeeper, trustee and other administrative services providers.

24.    Defendants Jane and John Does 1–25 are members of the Committee during the Class Period, who are unknown to Plaintiffs.

25.    Defendants are, or during the Class Period were, fiduciaries to the Plan within the meaning of ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and parties in interest to the Plan within the meaning of ERISA § 3(14)(A), (C), and (H), 29 U.S.C. § 1002(14)(A), (C) and (H).

## V.    FACTS

### A.    The Plan and its Administration.

26.    The Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

27.    The Plan is also an "employee pension benefit plan" or "pension plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and "defined contribution plan" or "individual account plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

7

28.     The Plan covers eligible employees of the Company.

29.     The Company is the Plan Sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

30.     The Committee is the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). Accordingly, it had (and has) exclusive authority and responsibility for all matters in connection with the operation and administration of the Plan.

31.     The Plan is record kept by Voya Financial, Inc., which provides recordkeeping and related administrative services with respect to retirement plans. Voya also serves as the Plan's trustee, a service provided as part of standard recordkeeping services in the industry.

32.     Plan participants have their own accounts within the Plan to which they may contribute a portion of the compensation they earn from their employment at the Company. The Company also has the discretion to compensate employees through matching contributions. Participants can direct the investment of the assets allocated to their individual accounts into the investment options approved by the Committee and offered by the Plan, and the return on those investments is credited to each participant's account.

33.     During the Class Period, the Plan invested in approximately 18 different investment options as well as a suite of "Target Retirement" Funds, which were available with various target retirement dates and gradually become more conservatively invested as that date approaches. For example, the Target Retirement

2050 Fund was designed to be a single fund that invests in a variety of stock, bond, and other investments at risk-levels suitable for someone planning to retire at or near the year 2050.

34.    The Plan's most recent Form 5500 filing with the U.S. Department of Labor states that at the end of the 2024 plan year the Plan had 86,328 participants with account balances, making it one of the largest 401(k) Plans in the United States, in the top 0.1% of all 401(k) plans.

35.    Voya served as the Plan's recordkeeper for the entirety of the Class Period.

36.    The recordkeeper of a defined contribution plan, like the Plan, maintains participant account balances, provides a website and telephone number for plan participants to monitor and control their plan accounts, and provides various other services to the plan, typically including trustee services.

37.    These services are highly commoditized, with little or nothing distinguishing the services provided by one recordkeeper over another.

38.    The cost of providing these services depends on the number of participants. Plans with large numbers of participants, like the Plan, can and should take advantage of economies of scale to negotiate a lower per-participant fee for recordkeeping services compared to smaller plans. Larger participant counts allow the recordkeeper to spread the fixed costs of a plan across a wider number of participants, reducing the per-participant fee.

39. Because Voya, like other recordkeepers in this jumbo space, are materially identical in terms of the services they provide (quarterly statements, a website and training materials for participants and Company staff, etc.) it is the standard and prevailing practice for retirement plan consultants and advisors (experts in the retirement plan industry) to request quotes by asking what the recordkeeper's revenue requirement is on a per participant basis for providing recordkeeping services.

40. For jumbo plans, like the Plan, any variation in the way certain recordkeeping and administrative services are received by the plan compared to other plans are not large enough to have a material impact on the reasonable market rate for recordkeeping services.

41. Because recordkeeping costs are not affected by account size, prudent fiduciaries negotiate recordkeeping fees on the basis of a fixed dollar amount for each participant in the plan, instead of a percentage of plan assets. Otherwise, as plan assets increase (such as through participant contributions and investment gains), recordkeeping compensation increases without any change in recordkeeping services.

42. For over two decades, industry experts have maintained that prudent fiduciaries treat recordkeeping services as a commodity with little variation in price. "Custody and recordkeeping are 'commodity' services. Like any commodity, given equal quality, the key benchmark for these services is price. The cheaper you can find competent custody and recordkeeping services, the better for participants." Eric Droblyen, *Evaluating 401(k) Providers: Separating Commodity from Value-Added*

*Services*,        https://www.employeefiduciary.com/blog/evaluating-401k-providers-separating-commodity-value-added-services (Feb. 10, 2015); *see also* Allen Steinberg, Unchecked        Revenue:        Show        Me        the        Fees, https://blog.retireaware.com/2018/01/12/unchecked-revenue/ (last visited June 16, 2026) ["Recordkeeping services have pretty much become a commodity for retirement plan fiduciaries; virtually every major recordkeeper (and most minor ones) provide the same core services"]; Fred Barstein, Investment News, Potential Pru Retirement Sale    a    Cautionary    Tale    of    a    401(k)    Innovator, https://www.investmentnews.com/retirement-planning/potential-pru-retirement-sale-a-cautionary-tale-of-a-401k-innovator/205453 (Apr. 20, 2021) ("[r]ecord keeping has become a commodity focused on scale and costs.").

43.    For providing various services, third-party plan administrators, record-keepers, consultants, investment managers, and other vendors in the 401(k) industry have developed a variety of pricing and fee structures.

44.    At best, these fee structures are complicated and confusing when disclosed to plan participants. At worst, they are excessive, undisclosed, and illegal.

45.    The compensation Voya received for its recordkeeping of the Plan was excessive, and Defendants breached their fiduciary obligations under 29 U.S.C. § 1104(a) to ensure that Voya only received reasonable compensation.

46.    The Committee also failed to have a prudent process for evaluating the amount and reasonableness of Voya's compensation. Instead of evaluating the cost of these services in the marketplace, the Committee permitted Voya to serve as the

recordkeeper for the Plan without meaningful market competition. Defendants allowed Voya to generate higher fees even though market rates for recordkeeping services dropped during the Class Period.

47.     Defendants' failure to control the Plan's excessive expenses constituted a breach of the duties of prudence in violation of 29 U.S.C. § 1104(a) and cost the Plan millions of dollars in excessive fees charged directly by Voya or collected by Voya from the Plan's investment options through revenue sharing.

48.     Pursuant to 29 U.S.C. § 1109(a), Defendants are personally liable to make good to the Plan any losses to the Plan resulting from this breach, as well as any other equitable or remedial relief the Court deems appropriate.

### B.     Voya's Sources of Compensation

49.     Defendants caused the Plan to purchase recordkeeping, administration, investment management, and other services from various institutions and entities.

50.     Defendants caused the amounts that the Plan paid for these services to be assessed against Plan participants' accounts.

51.     The fees paid to Voya were unreasonable and excessive, especially considering the Plan's significant size.

52.     Defendants caused or allowed Voya to receive payment in at least three ways: (1) by direct disbursement from the Plan to the entity providing the service; (2) by receiving "Revenue Sharing" payments from Plan investments distributed between or among various service providers; and (3) through other sources of

compensation, including float interest and access to plan participants for marketing purposes.

### i. Reported Compensation to Voya

53.    The direct disbursements from the Plan from Plan investments were calculated and reported to the United States Department of Labor annually. They were reported as:

| Year | Plan Participants with Balances | Voya's Compensation from the Plan | Voya's Compensation Per Participant |
|---|---|---|---|
| 2020 | 103,269 | $6,668,251 | $64.57 |
| 2021 | 91,886 | $3,822,807 | $41.60 |
| 2022 | 97,260 | $4,829,958 | $49.66 |
| 2023 | 101,985 | $4,507,464 | $44.20 |
| 2024 | 86,328 | $7,147,197 | $82.79 |
| Total | | $26,975,677 | |

54.    Direct disbursements include payments made directly from the Plan or Plan participants to Voya out of Plan assets.

55.    Revenue Sharing is the transfer of asset-based compensation from brokers or investment management providers (such as mutual funds, common collective trusts, insurance companies offering general insurance contracts, and similar pooled investment vehicles) to administrative service providers (record-keepers, administrators, trustees) in connection with 401(k) and other types of defined contribution plans.

56.    For example, a plan or its agent (e.g., a third-party administrator, consultant, or similar fiduciary) seeking to invest plan assets in an investment vehicle (e.g., a mutual fund, common and collective trust, guaranteed investment contract, ETF, etc. (collectively a "Fund")) will negotiate the costs assessed against each dollar invested by specifying the expense ratio and available Revenue Sharing (which is included within the expense ratio).

57.    In Revenue Sharing arrangements, the plan and the Fund agree upon an asset-based fee (i.e., an expense ratio) that is not the true price for which the Fund will provide its service.

58.    Instead, the agreed asset-based fee includes *both* the actual price for which the Fund will provide its service *and* additional amounts that the Fund does not need to cover the cost of its services and to make a profit.

59.    The additional portion of the agreed-upon asset-based charge is "shared" with plan service providers or others who do business with the plan or the Fund.

60.    As a result of Revenue Sharing arrangements, plan service providers or others who do business with the plan or the Fund can receive *both* direct disbursements from the plan *and* additional revenue that the Fund "shares" with them.

61.    Although Voya reported these amounts to the Defendants, they were not reported to participants or filed with the U.S. Department of Labor. Rather, the Plan's Forms 5500 merely disclosed the existence of such payments.

14

62.     Therefore, Voya received recordkeeping compensation through Revenue Sharing in addition to and not reflected in the chart of direct compensation in Paragraph 53 above.

### ii. Unreported Compensation to Voya

63.     Fiduciaries have an obligation to understand all sources of compensation a plan service provider, like Voya, receives and to make sure the total compensation is not more than a reasonable amount.

64.     Voya has opportunities to profit from its position as recordkeeper in several ways. Voya offers IRA products it can market to current and departing participants in the Plan using participant information obtained from its position as recordkeeper to target the participants it wants in the ways and at the times those participants are most likely to respond to Voya's cross-marketing efforts.

65.     In addition, Voya benefits from interest earned on Plan assets as they enter and leave the Plan.

66.     For example, a departing participant's plan account may be sold, but Voya requires the distribution to the participant to be done by mailing a check. Those assets are earning interest during the time between the sale of the participant's plan investment and the clearing of the check following Voya mailing it and the participant taking it to their bank or rolling over their account.

67.     Defendants did not consider, measure, or compare the value to Voya from the cross-marketing opportunities and interest on in- and out-flows when evaluating the reasonableness of Voya's compensation.

## C.    Excessive Recordkeeping Fees

68.    Recordkeeping is a service necessary for every defined contribution plan. The market for recordkeeping services is highly competitive. There are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to a large defined contribution plan like the Plan. These recordkeepers primarily differentiate themselves based on price, and vigorously compete for business by offering the best price.

69.    The cost of recordkeeping services depends on the number of participants, not on the amount of assets in the participant's account. Thus, the cost of providing recordkeeping services to a participant with a $100,000 account balance is the same for a participant with $1,000 in her retirement account. For this reason, prudent fiduciaries of defined contribution plans negotiate recordkeeping fees based on a fixed dollar amount for each participant in the plan rather than as a percentage of plan assets. Otherwise, as plan assets increase through participant contributions or investment gains, the recordkeeping compensation increases without any change in the recordkeeping and administrative services.

70.    Large defined contribution plans, like the Plan, experience economies of scale for recordkeeping and administrative services. As the number of participants in the plan increases, the per-participant fee charged for recordkeeping and administrative services decline. These lower administrative expenses are readily available for plans with a greater number of participants.

16

71.     Nevertheless, studies and expert testimony consistently show that reasonable recordkeeping fees for plans much smaller than the Plan are at or below $40 per participant per year.

72.     A study commissioned by the U.S. Department of Labor in 1998 demonstrates these economies of scale, finding that as the number of plan participants increases, the cost per participant decreases. Per the Study, Recordkeeping fees for plans with 1,000 participants, the largest plans reviewed in the study, averaged $34 per participant. Ex. 1 at Sec. 4.2.2. This was almost thirty years ago. Since then, 401(k) fees have trended down sharply.

73.     A survey of 240 plans published by NEPC showed that even for plans as small as 15,000 participants (their largest category at the time) most plans in 2022 were able to obtain combined recordkeeping, trustee, and custodial services for less than $40 per participant per year. Ex. 2. Two years later, the same organization issued a survey showing results for plans with at least 50,000 participants and determined that none of the plans in that size category in their survey paid more than $38 per participant. Ex. 3.

74.     Market prices for large plans like the Plan (i.e., plans with more than 75,000 participants and over $1 billion in assets) are typically considerably lower because of available economies of scale and the bargaining power exerted by prudent fiduciaries. *See Tussey v. ABB, Inc.*, 2012 WL 1113291, at \*11 (W.D. Mo. 2012) (determining after a trial that recordkeeping fees of around $100 per participant per year were excessive for a plan with 12,567 participants), vacated in part but affirmed

17

as to recordkeeping at 746 F.3d 327 (8th Cir. 2014); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018) (denying motion to dismiss where plaintiffs claimed "the outside limit of a reasonable recordkeeping fee" for a plan with roughly 40,000 participants was $30 per participant with an account balance); *Sacerdote v. New York Univ.*, No. 16-6284, 2017 WL 3701482, at \*9 (S.D.N.Y. Aug. 25, 2017) (the "market rate" for total administrative fees for "jumbo" plans should be $35 per participant).

75.    While the Plan is so large that benchmarking surveys are not readily available, evidence from several peers supports the surveys and data from somewhat smaller plans above.

76.    Notably, a competing company in the recordkeeping space, Fidelity, has stated as part of stipulated facts in a case involving a different jumbo plan, that: "The value of the recordkeeping services that Fidelity provided to the Plan in 2014 was $21 per participant; the value of the recordkeeping services that Fidelity provided to the Plan in 2015 and 2016 was $17 per participant, per year, and the value of the recordkeeping services that Fidelity has provided to the Plan since January 1, 2017 is $14 per participant, per year. Had the Plan been a third-party plan that negotiated a fixed fee for recordkeeping services at arm's length with Fidelity it could have obtained recordkeeping services for these amounts during these periods. The Plan did not receive any broader or more valuable recordkeeping services from Fidelity than the services received by any other Fidelity-record-kept plan with at least $1 billion in assets during the Class Period (November 18, 2014 to the present)." *See Moitoso v.*

*FMR LLC, et al.*, No. 1:18-cv-12122, Stipulation of Facts, Dkt. 128-67, at 4–5 (D. Mass. Sep. 6, 2019). The Plan here had approximately $2 billion in assets across the Class Period.

77.    Other similarly sized plans also enjoyed far lower fees. The Delta 401(k) Retirement Plan had 107,760 participants and paid its recordkeeper $2,305,205 (plus revenue sharing) in 2024, less than $22 per participant. That same year, the T-Mobile USA Inc. 401(k) Retirement Savings Plan paid $1,831,894 to the recordkeeper of its 78,399 participant plan, roughly $23 per participant. Also in 2024, the Verizon Savings Plan for Management Employees, with 118,299 participants, paid approximately $20.50 per participant for recordkeeping fees and the recordkeeper did not receive additional revenue sharing.

78.    That same year the Plan had 86,328 participants and paid Voya $7,147,197 plus revenue sharing, representing $82.79 per participant — 3 to 4 times higher than similarly-sized peers.

79.    For these fees, Voya provided only standard services typical of other recordkeepers, including trustee services.

80.    Studies of recordkeeping fees across the Class Period show no material change in market rates for jumbo plans, like the Plan, from year to year over the Class Period.

81.    To ensure that plan administrative expenses are reasonable, prudent fiduciaries of large defined contribution plans, such as the Plan, put plan recordkeeping and administrative services out for competitive bidding at regular

intervals of three to five years, but Plaintiffs are not aware of any effort to do so during the relevant period here, and the Plan has continued to use Voya since at least 2012.

82.    Taking into account the administrative services required by the Plan and provided by Voya, the Plan's participant level (roughly 100,000 participants), and the market rates for these services, the maximum reasonable recordkeeping fee for the Plan would have been $35 per participant per year.

83.    Without even accounting for revenue sharing and other sources of compensation to Voya, the amount paid by the Plan was clearly excessive throughout the relevant period.

| Year | Plan Participants with Balances | $35 per Participant | Voya's Compensation from the Plan | Excessive Fee |
|------|------|------|------|------|
| 2020 | 103,269 | $3,614,415 | $6,668,251 | |
| 2021 | 91,886 | $3,216,010 | $3,822,807 | |
| 2022 | 97,260 | $3,404,100 | $4,829,958 | |
| 2023 | 101,985 | $3,569,475 | $4,507,464 | |
| 2024 | 86,328 | $3,021,480 | $7,147,197 | |
| Total | | $16,825,480 | $26,975,677 | $10,150,197 |

84.    Accounting for Voya's compensation through disclosed sources, the Plan paid Voya over $10.15 million in excessive fees from direct payments. There was also additional compensation to Voya in undisclosed amounts.

85.    These damages do not reflect the opportunity cost to the Plan of having excessive fees deducted in each year. Had the excessive fees paid to Voya instead remained in the Plan, and been invested, the Plan would have significantly more than $10 million in additional assets.

### D.    Failure to Prudently Monitor Recordkeeping Fees

86.    A plan fiduciary must continuously monitor its recordkeeping fees by regularly conducting an independent evaluation of those fees to ensure they are reasonable and remove recordkeepers if those fees are unreasonable.

87.    During the Class Period, Defendants failed to regularly monitor the Plan's recordkeeping fees as evidenced by the fiduciaries' failure to remove Voya over at least the prior 14 years and the high recordkeeping fees and dramatic increase of those fees during the Class Period.

88.    Defendants failed to take advantage of the Plan's massive size to timely negotiate lower fees from its existing recordkeeper or replaced its existing recordkeeper with a competitor willing and able to perform the same services for substantially lower fees.

89.    During the Class Period, Defendants knew or had knowledge that they must engage in regular reasonable examination and competitive comparison of the Plan's recordkeeping fees, but Defendants either simply failed to do so, or did so ineffectively given that the Plan paid three to four times the market rate for the recordkeeping services it received.

## VI.    ERISA'S FIDUCIARY STANDARDS

90.     ERISA imposes strict fiduciary duties of loyalty and prudence upon Defendants  as fiduciaries of the Plan. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest  of the participants and beneficiaries and —
>> (A)   for the exclusive purpose of:
>>> (i)   providing benefits to participants and their beneficiaries; and
>>> (ii)  defraying reasonable expenses of administering the plan; [and]
>> (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and  familiar with such matters would use in the conduct of an enterprise of like  character and with like aims;
>> (C)   by diversifying the investments of the plan so as to minimize the  risk of large losses, unless under the circumstances it is clearly prudent not to do so[.]

91.     ERISA also imposes co-fiduciary duties on plan fiduciaries. ERISA § 405, 29 U.S.C. § 1105, states in relevant part that:

> In addition to any liability which he may have under any other provision of this  part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary  responsibility of another fiduciary with respect to the same plan in the following  circumstances:
>> (1)   if he participates knowingly in, or knowingly undertakes to  conceal, an act or omission of such other fiduciary, knowing such act or omission  is a breach;
>> (2)   if, by his failure to comply with section 404(a)(1) in the administration of his  specific responsibilities which give rise to his status as a  fiduciary, he has enabled such other fiduciary to commit a breach; or
>> (3)   if he has knowledge of a breach by such other fiduciary, unless he  makes reasonable efforts under the circumstances to remedy the breach.

92.     Under ERISA, fiduciaries who exercise discretionary authority or control over the  selection of plan investments and the selection of plan service providers must act prudently and  solely in the interest of participants and beneficiaries of the plan when performing such  functions. Thus, "the duty to conduct an independent investigation into the merits of a particular  investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).

93.     As the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other factors, the  availability, riskiness, and potential return of alternative investments for his or  her plan. [Where an investment], if implemented, causes the Plan to forego other  investment opportunities, such investments would not be prudent if they provided a plan with less return, in comparison to risk, than comparable investments  available to the plan, or if they involved a greater risk to the security of plan  assets than other investments offering a similar return.

DOL Opinion 88-16A (1988).

94.     Pursuant to these duties, fiduciaries must ensure that the services provided to the  plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act  prudently and solely in the interest of the Plan participants and beneficiaries … in  determining which investment options to utilize or make available to Plan  participants or beneficiaries. In this regard, the responsible Plan fiduciaries must assure that the compensation paid directly or indirectly by the Plan to [service  providers] is reasonable.

DOL Opinion 97-15A (1997); DOL Opinion 97-16A (1997).

109.    Additionally, the Department of Labor has repeatedly warned:

> While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

*Meeting Your Fiduciary Responsibilities*, U.S. Dep't of Labor Employee Benefits

Security Admin. (Feb. 2012), https://www.dol.gov/node/63394

110.    In a separate publication, the Department of Labor wrote:

> The Federal law governing private-sector retirement plans, the Employee Retirement Income Security Act (ERISA), requires that those responsible for managing retirement plans -- referred to as fiduciaries -- carry out their responsibilities prudently and solely in the interest of the plan's participants and beneficiaries. Among other duties, fiduciaries have a responsibility to ensure that the services provided to their plan are necessary and that the cost of those services is reasonable.

> * * *

> Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

*Understanding Retirement Plan Fees and Expenses*, U.S. Dep't of Labor Employee

Benefits Security Admin. (Dec.    2011) https://www.dol.gov/agencies/ebsa/about-

ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses

111.    In addition, ERISA bars categorically certain prohibited transactions. ERISA § 406(a), 29 U.S.C. § 1106(a), prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect— (A) sale or exchange, or leasing, of any property between the plan and a party in interest; … (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

112.    ERISA § 405(a), 29 U.S.C. § 1105(a), provides a cause of action against a fiduciary, such as the Company, for knowingly participating in a breach by another fiduciary, enabling another fiduciary's breach by breaching one's own duties such as the duty to monitor, and knowingly failing to cure any breach of duty.

113.    ERISA § 409(a), 29 U.S.C. § 1109(a), provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409(a), 29 U.S.C. § 1109(a), further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

## VII.  CLASS ACTION ALLEGATIONS

114.  ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary, participant, beneficiary, or the Secretary of Labor to bring a suit individually on behalf of the Plan to recover for the Plan the remedies provided under ERISA § 409, 29 U.S.C. § 1109.

115.  In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, and in addition to direct individual actions on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiffs seek to certify this action as a class action on behalf of:

> All participants in the Plan from June 23, 2020 to the date of judgment. Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.

116.  Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

(a)  The class satisfies the numerosity requirement of Rule 23(a) because it is composed of approximately 100,000 persons, in numerous locations. The number of class members is so large that joinder of all its members is impracticable.

(b)  The class satisfies the commonality requirement of Rule 23(a) because there are questions of law and fact common to the Class and these questions have common answers. Common legal and factual questions include, but are not limited to: (i) who are the fiduciaries liable for the remedies provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (ii)

whether the compensation paid to Voya to record-keep the Plan was reasonable in light of the services provided; (iii) what are the losses to the Plan resulting from each; and (iv) what are the profits of any breaching fiduciary that were made through the use of Plan assets by the fiduciary.

(c)    The class satisfies the typicality requirement of Rule 23(a) because Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiffs were investors in the Plan during the Class Period.

(d)    The class satisfies the adequacy requirement of Rule 23(a). Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class action litigation. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

(e)    Class action status in this action is warranted under Rule 23(b)(1)(A) because  prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of

conduct for Defendants. Class action status also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

(f)    In the alternative, certification under Rule 23(b)(2) is warranted because  Defendants acted or refused to act on grounds generally applicable to the Class, thereby making  appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

(g)    In the alternative, certification under Rule 23(b)(3) is appropriate because  questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VIII.   CLAIMS FOR RELIEF

### a.   Count I - Breach of Fiduciary Duty in Connection with Administrative Fees to Voya against the Committee and John Doe Defendants

117.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

118.   The Committee and John Doe Defendants were and are responsible for selecting, monitoring, negotiating with and removing the Plan's recordkeeper.

119.   These defendants caused the Plan to pay, directly or indirectly, millions of dollars in excessive recordkeeping compensation to Voya during the Class Period. Voya's compensation was excessive and unreasonable given the services provided.

120.   They failed to monitor and control these costs despite lower-cost recordkeeping alternatives.

121.    By the conduct and omissions described above, Defendants failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

122.   Defendants failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

123.    As a direct and proximate result of these breaches of fiduciary duties, the Plan and its participants have paid, directly and indirectly, substantial excess fees during the Class Period, and suffered lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

### b.  Count II – Failure to Adequately Monitor Other Fiduciaries

124.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

125.    Defendant Sodexo had the authority to appoint and remove members of the Committee and anyone else responsible for the Plan's recordkeeping fees and knew or should have known that the Committee and others had critical fiduciary responsibilities for the Plan.

126.    In light of this authority, Defendant Sodexo had a duty to monitor those individuals responsible for the Plan's recordkeeping fees to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

127.    Defendant Sodexo had a duty to ensure that the individuals responsible for Plan administration on the Committee possessed the needed qualifications and experience to carry out their duties (or used qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis

with respect to the Plan's investments; and reported regularly to Sodexo, which appointed them, including but not limited to the Board of Directors.

128.   The unreasonable and excessive fees paid to Voya show Sodexo breached its duty to monitor by, among other things: (a) Failing to monitor and evaluate the performance of individuals responsible for Plan administration, including the members of the Committee, or having a system in place for doing so; (b) Failing to monitor the process by which Voya was evaluated and failing to investigate the availability of more reasonably-priced recordkeepers; and (c) Failing to remove individuals responsible for the Plan's recordkeeping fees from the Committee given their inadequate performance and continued failure to solicit competitive bids or otherwise secure reasonable recordkeeping fees for the Plan.

129.   As the consequences of the foregoing breaches of the duty to monitor, the Plaintiffs, the Class, and the Plan suffered millions of dollars of unreasonable and unnecessary monetary losses.

130.   Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendant Sodexo is liable to restore to the Plan all losses caused by its failure to adequately monitor individuals responsible for the Plan's recordkeeping arrangement and fees. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

### c.   Count III – Prohibited Transactions and Co-Fiduciary Breaches of Duty

131.   Plaintiffs incorporate the preceding paragraphs as though set forth herein.

132. As service provider to the Plan, Voya was a party in interest. 29 U.S.C. § 1002(14)(B).

133. By causing the Plan to use Voya as the Plan's recordkeeper from year to year, Defendants caused the Plan to engage in transactions that Defendants knew or should have known constituted an exchange of property between the Plan and Voya prohibited by 29 U.S.C. § 1106(a)(1)(A), a direct or indirect furnishing of services between the Plan and Voya prohibited by 29 U.S.C. § 1106(a)(1)(C), and a transfer of Plan assets to, or use by or for the benefit of Voya, prohibited by 29 U.S.C. § 1106(a)(1)(D). These transactions occurred each time the Plan paid fees to Voya and in connection with the Plan's investments in funds that paid revenue sharing to Voya.

134. Total losses to the Plan will be determined after complete discovery in this case and are continuing.

135. Under 29 U.S.C. §§ 1106(a), 1109(a), and 1132(a)(2), Defendants are liable to restore all losses to the Plan resulting from these prohibited transactions, and to provide restitution of all proceeds from these prohibited transactions, and are subject to other appropriate equitable or remedial relief.

136. Each Defendant knowingly participated in these breaches of ERISA, enabled the other Defendants to breach ERISA and cause the Plan to engage in prohibited transactions, and knew of these breaches and failed to make any reasonable effort under the circumstances to remedy them or discontinue the prohibited transactions. Thus, under 29 U.S.C. §§ 1105(a), 1109(a), and 1132(a)(2),

each Defendant is liable for restoring all proceeds and losses attributable to these transactions.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.     A declaration that Defendants breached their fiduciary duties under ERISA §§ 404 and 405, and caused the Plan to engage in prohibited transactions in violation of ERISA § 406.

B.     An order compelling the Defendants to restore all losses to the Plan arising from Defendants' violations of ERISA, including lost-opportunity costs;

C.     An order granting equitable restitution and other appropriate equitable monetary relief against Defendants;

D.     Such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan;

E.     An order certifying this action as a class action, certifying the named Plaintiffs as class representatives and their counsel as class counsel, designating the Class to receive the amounts restored or disgorged to the Plan, and imposing a constructive trust for distribution of those amounts to the extent required by law;

F.     An order enjoining Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

G.     An order awarding Plaintiffs and the Class their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or the Common Fund doctrine,

and prejudgment and post-judgment interest; and

H.    An order awarding such other and further relief as the Court deems equitable and just.

Dated: June 23, 2026               **BAILEY & GLASSER LLP**

*/s/ Cary L. Joshi*
Cary L. Joshi (MD Bar No. 1806070002)
Gregory Y. Porter (*pro hac vice* to be filed)
Ryan T. Jenny (*pro hac vice* to be filed)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
cjoshi@baileyglasser.com
gporter@baileyglasser.com
rjenny@baileyglasser.com

Mark G. Boyko (*pro hac vice* to be filed)
34 N. Gore Avenue, Suite 102
Webster Groves, MO 63119
Telephone: (314) 863-5446
Facsimile: (314) 863-5483
mboyko@baileyglasser.com

Laura E. Babiak (*pro hac vice* to be filed)
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
lbabiak@baileyglasser.com

Patrick O. Muench (*pro hac vice* to be filed)
318 W. Adams St., Suite 1512
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (314) 342-1110
pmuench@baileyglasser.com

*Attorneys for Plaintiffs Alton Scott, John Malone and Clifford Todd Hanks*